IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DEBRA B.,[1]                                                    Case No. 6:22-cv-00759-HL

        Plaintiff,                                   **OPINION AND ORDER**

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

_____

HALLMAN, United States Magistrate Judge:

       Plaintiff Debra B. brings this action under the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the

decision of the Commissioner is REVERSED and REMANDED for further proceedings

consistent with this Opinion and Order.

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)*. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

I.    **Plaintiff's Application**

Plaintiff alleges disability based on lupus, sjogren's depression, high blood pressure, osteoarthritis in the knees and hips, diabetes, diabetic retinopathy, peripheral neuropathy, and

"possible reynoud's syndrome." Tr. 66-67.[2] At the time of her alleged onset date, she was 47

years old. Tr. 66. She has completed high school. Tr. 42, 585. She has past relevant work as a

medical transcriptionist. Tr. 24.

Plaintiff protectively applied for DIB on October 25, 2018, alleging an onset date of May

15, 2010. Tr. 82. Her application was denied initially on April 3, 2019, and on reconsideration on

December 18, 2019. Tr. 79, 95. Plaintiff subsequently requested a hearing, which was held on

January 13, 2021, before Administrative Law Judge ("ALJ") Kathryn Burgchardt. Tr. 36.

Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 38-64. A vocational

expert ("VE"), Douglas Prutting, also testified. Tr. 59-64. On March 19, 2021, the ALJ issued a

decision denying plaintiff's claim. Tr. 25. Plaintiff requested the Appeals Council to review ALJ

Burgchardt's decision, which was denied on March 21, 2021. Tr. 1-6. Plaintiff then sought

review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 5).

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 13.

At step two, the ALJ determined that plaintiff has the following severe impairments: "fibromyalgia; positive ANA with suspected Sjogren's/lupus; complex regional pain syndrome; osteoarthritis of the hips and knees; status post C5-6 fusion and bilateral carpal tunnel syndrome status post right carpal tunnel release with hand numbness; and obesity." *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 15. The ALJ then resolved that plaintiff had the RFC to do sedentary work with the following limitations:

> She can lift or carry up to 10 pounds frequently and 10 pounds occasionally. She can stand or walk with normal breaks for a total of two hours in an eight-hour workday and may use a cane to ambulate. She can sit with normal breaks for a total of six hours in an eight-hour workday. She can perform pushing and pulling motions with upper and lower extremities with the weight restrictions given. She can perform postural activities occasionally and those would be stooping, crouching, kneeling and crawling. She should not climb any ladders, ropes or scaffolds on the job. She can perform balancing but limited to only frequent. She can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching, however, fine manipulation bilaterally would be limited to only frequent.

Tr. 18.

At step four, the ALJ found that plaintiff could perform her past relevant work as a medical transcriptionist. Tr. 24. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24-25.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) improperly finding plaintiff's mental impairments were not severe at step two; (2) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony; and (3) failing to provide clear and convincing reasons to reject the lay witness' testimony.

I.      **Step Two Finding**

Plaintiff contends the ALJ erred at step two by failing to find her mental impairments severe. Pl.'s Opening Br., ECF 18, 14-15. Any error in this regarding was harmless, however, because the ALJ continued with the sequential analysis.

At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). The step two threshold is low; it is "*de minimus* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "Step two . . . is not meant to identify the impairments that should be taken into account when determining the RFC. The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not. *Buck v. Berryhill,* 869 F.3d 1040, 1048–49 (9th Cir. 2017) (citations omitted). As such, any "error at step two [is] harmless [if] step two was decided in [the claimant's] favor with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

Here, the ALJ found that plaintiff had a number of medically determinable and severe impairments at step two. Tr. 13. Concerning plaintiff's mental impairments of adjustment disorder mixed with anxiety and depressed mood, the ALJ determined they were not severe. Tr. 15. The ALJ explained that plaintiff's "mental status exams failed to show significant abnormalities" and that her mental impairments cause only mild difficulties in functioning. Tr. 19, 23. The ALJ then went on to continue the sequential evaluation process and formulated an RFC that considered evidence and allegations pertaining to plaintiff's mental impairments. Tr. 18-23. Thus, "under well-established case law, any alleged error at step two was harmless." *Gary*

*M. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00631-JR, 2023 WL 3276178, at \*2 (D. Or. May 5, 2023) (citing *Buck*, 869 F.3d at 1048-49).

## II.    Subjective Symptom Testimony

Plaintiff next asserts that the ALJ failed to provide clear and convincing reasons to reject her symptom testimony. Pl.'s Opening Br. 4-13. Specifically, plaintiff contends that the ALJ failed to link the testimony she found find not credible to the particular parts of the record supporting her non-credibility determination. *Id*. at 7. This Court agrees.

### A.    Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at \*1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id*.

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)*.* In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.    Plaintiff's Testimony

Plaintiff reported that she could not work on a regular basis because she needs to rest "a lot." Tr. 46. Plaintiff was asked specifically as to why she could not work full-time as a medical transcriptionist:

> Q:    . . . Why are you doing so little work now?
>
> A.    I'm doing as much as I can actually handle because of my tiredness and my eyesight.
>
> Q.    How do those affect your ability to work?
>
> A.    I do have to stop and rest during the day. And also, I have issues with seeing the computer screen, being too bright. And so, I do have to stop and rest and close my eyes.
>
> Q.    How long can you be in front of the computer doing your medical transcription work before you have to stop and rest?
>
> A.    Usually about 20 minutes to an hour.
>
> Q.    And then what do you need to do?
>
> A    I do need to rest my eyes. And I take the opportunity just to rest, also. So, I'll need to close my eyes. And I usually use eye drops, also.

Tr. 48. In her function report, plaintiff stated that her fatigue is constant and "debilitating" and that she became "so tired in the afternoons that [she has] to sleep." Tr. 232. Plaintiff discussed

how her carpal tunnel syndrome greatly affects her ability to type and that she can only type for "about twenty minutes to an hour" before she must take a break. Tr. 51. Plaintiff testified that it takes her an hour of resting to go back to doing medical transcription work, and that she can only perform three hours of transcription work during an eight-hour day. Tr. 49-50.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19. The ALJ reasoned that plaintiff's testimony of her disabling limitations was inconsistent with (1) evidence of her daily activities, (2) her work history, and (3) evidence from the medical record. Tr. 18-21

**C.    Analysis.**

Here, the ALJ failed to link the particular parts of the record supporting she found non-credible to the parts of the record supporting her non-disability determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (an ALJ must "link" the testimony they find not credible "to the particular parts of the record supporting [their] non-credibility determination"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (an "ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints") (citation and quotations omitted). Although there may have been substantial evidence in the record for the ALJ to reject portions of plaintiff's testimony based on her activities of daily living, *see Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015), her part-time work as a transcriptionist, *see Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020), and the objective medical evidence, *see Carmickle v. Comm'r of Soc. Sec. Admin.*,

533 F.3d 1155, 1161 (9th Cir. 2008), the ALJ failed to link that evidence with the specific testimony she rejected. Accordingly, the ALJ's rejection of plaintiff's subjective symptom testimony was not supported by substantial evidence.

With respect to plaintiff's activities of daily living, the ALJ discussed how plaintiff took care of her daughter and pets, performed household chores, prepared meals, engaged in hobbies with friends, drove a vehicle, shopped in stores, and handled money management activities. Tr. 19. These activities certainly call into question portions of plaintiff's testimony; however, the ALJ failed to specifically link those activities plaintiff's purported inability to work full-time as a medical transcriptionist due to her eyesight, fatigue, and carpal tunnel syndrome. Because the ALJ failed to identify which specific daily activities that contradicted plaintiff's testimony as to why she was unable to work full time, her decision was not supported by substantial evidence. *Burrell v. Colvin,* 775 F.3d 1133, 1138 (9th Cir. 2014) (holding that the ALJ erred because "the ALJ did not elaborate on which daily activities conflicted with which part of Claimant's testimony").

With respect to plaintiff's part-time employment, the ALJ failed to connect plaintiff's part-time work as a medical transcriptionist with her ability to work full-time in that same job. Plaintiff provided specific and detailed testimony as to why she was only able to work up to three hours per day due to her fatigue, carpal tunnel syndrome, and eyesight. Tr. 48-50. While the ALJ may "consider any work activity, including part-time work, in determining whether a claimant is disabled," *Ford*, 950 F.3d at 1156, the ALJ must still connect plaintiff's ability to work part time with a specific basis for rejecting her testimony. She failed to do so here.[4] The

---

[4] If anything, plaintiff's testimony as to her specific limitations was consistent with the part-time work she was actually performing. Plaintiff should not be penalized for her ability to work part time in a job that allows significant accommodations for her impairments. *See Aida R. v. Comm'r*

ALJ's reliance on plaintiff's part-time employment to reject her symptom testimony was therefore not supported by substantial evidence.

Finally, with respect to the medical evidence, the ALJ failed to link the objective medical evidence to plaintiff's testimony as to why she was unable to work full-time as a medical transcriptionist. To be sure, the ALJ cited ample medical evidence sufficient to discount plaintiff's testimony regarding her pain. Tr. 19-21. However, plaintiff did not testify that she was unable to work full time as a medical transcriptionist due to her pain. And, while that ALJ cited to objective medical evidence that could potentially cast doubt on plaintiff's complaints of fatigue and her carpal tunnel syndrome, Tr. 20, 21, she failed to connect any of those records with the parts of plaintiff's testimony she found non-credible, which was an error. *See Brown-Hunter*, 806 F.3d at 494. In sum, "[a]lthough the ALJ did provide a relatively detailed overview of [plaintiff's] medical history, 'providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (citing *Brown-Hunter*, 806 F.3d at 494)).

For these reasons, the ALJ's rejection of plaintiff's subjective symptom testimony was not supported by substantial evidence, and remand is required.

## III.    Lay Witness Testimony

Finally, plaintiff argues that the ALJ failed to consider lay witness testimony – specifically, the third-party function reports – regarding her symptoms, contending that "an ALJ

---

*of Soc. Sec.,* No. C19-5987-BAT, 2020 WL 3397256, at *2 (W.D. Wash. June 19, 2020) (so holding).

may not reject such testimony without comment." Pl.'s Opening Br. 13. This Court agrees, and further concludes that any error was not harmless.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted).[5] However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Here, the ALJ erred by failing to provide any basis for rejecting the third-party function reports without comment. *See Molina*, 674 F.3d at 1114. Defendant asserts that this error is harmless because the reports largely mirrored plaintiff's testimony and "the ALJ provided legally valid reasons supported by substantial evidence to reject plaintiff's symptom allegations." Def.'s

---

[5] The parties disagree about whether the Commissioner's revised regulations require the ALJ to articulate germane reasons for rejecting lay witness testimony. Defendant cites a recent Ninth Circuit case, noting it is still an "open question" whether ALJs must consider nonmedical source statements under the revised regulations. Def. Br. at 10 (citing *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3, n.1 (9th Cir. Dec. 27, 2022) (unpublished) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."). However, Courts within this District that have considered the "open question" have uniformly found the "germane reasons" requirement survives the new regulations, at least absent further guidance from the Ninth Circuit. *See Blainey E. v. Comm'r, Soc. Sec. Admin.*, No. 6:21-CV-00737-MC, 2023 WL 2675149, at *8 (D. Or. Mar. 29, 2023); *Julie J. v. Comm'r, Soc. Sec. Admin.*, No. 6:21-CV-01384-HZ, 2023 WL 3002388, at *7 (D. Or. Apr. 18, 2023); *Meaghan V. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-CV-01530-HZ, 2023 WL 7545944, at *3 (D. Or. Nov. 14, 2023). This Court agrees that absent further guidance from the Ninth Circuit, the germane reasons requirement survives the revised regulations.

Br., ECF 21, 11. This Court agrees that the reports largely mirrored plaintiff's testimony; however, because the ALJ's rejection of plaintiff's symptom testimony was not supported by substantial evidence, this Court cannot conclude that the error was harmless.

## VI.    Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Here, Plaintiff seeks a remand for further proceedings. Pl. Opening Br. 15. This Court agrees. On remand, the ALJ must reassess Plaintiff's subjective symptom testimony and the lay witness statements and, if necessary, reformulate Plaintiff's RFC, obtain additional VE testimony, and proceed with the sequential analysis.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 15th day of December, 2023.

ANDREW HALLMAN
United States Magistrate Judge